**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:17-cr-00072-JAW-1 |
| | ) | |
| DAVID L. COOK | ) | |

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

A federal inmate serving a fifteen-year sentence for accessing with intent to view child sex abuse material seeks compassionate release based on a diagnosis of terminal stage IV colon cancer. The inmate moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). Concluding that, although the inmate's terminal illness constitutes an extraordinary and compelling reason for release, because it is unclear that that his present circumstances and conditions of supervised release sufficiently mitigate the danger he poses to the community, the court defers ruling on the ultimate merits of the motion and orders the production of additional information on his medical status.

## I. PROCEDURAL BACKGROUND

On October 10, 2017, David L. Cook pleaded guilty to a one-count indictment. *Min. Entry* (ECF No. 44). On December 12, 2018, the Court sentenced Mr. Cook to one-hundred and eighty months of imprisonment, followed by ten years of supervised release, and ordered him to pay $1,000.00 in restitution and a $100.00 special assessment after he pleaded guilty to a one-count indictment for possession of child

sexual abuse material[1] in violation of 18 U.S.C. § 2252A(a)(5)(B) and § 2252A(b)(2). *Min. Entry* (ECF No. 74); *J.* (ECF No. 77). The Court also entered a final order of forfeiture. *Final Order of Forfeiture* (ECF No. 76).

On July 14, 2026, Mr. Cook moved pro se for compassionate release, filing an emergency motion requesting the Court's intervention to expedite the Bureau of Prisons' consideration of compassionate release based on his terminal illness. *Emergency Mot. for the Court's Intervention and Assistance to Expedite the Bureaucracy Holding up the 3582 Compassionate Release that the BOP had Instituted on my Behalf Due to my Terminal Illness* (ECF No. 82) (*Def.'s Mot.*). On July 30, 2026, the Court granted Mr. Cook's motion to seal and cure defects in Exhibits A through C to his motion and directed him to redact and refile those exhibits. *Order* (ECF No. 86). On July 31, 2026, the Government filed its opposition to Mr. Cook's motion. *Gov't's Resp. in Opp'n to Def.'s Mot. for Compassionate Release* (ECF No. 87) (*Gov't's Opp'n*). Mr. Cook did not file a reply, and on August 26, 2026, the Court took the motion under advisement. On October 27, 2026, the Court issued an Order to Supplement the Record, directing the Probation Office to file its assessment of Mr. Cook's proposed residence by October 30, 2026. *Order to Supplement the Record* (ECF No. 88). On October 28, 2026, the Government filed a response to the Court's Order,

[1] The Court uses the term "child sexual abuse material" rather than "child pornography" throughout this Order, except when quoting statutory language, the Sentencing Guidelines, or judicial opinions. Although "child pornography" remains the terminology employed in the relevant federal statutes, the term "child sexual abuse material" more accurately reflects the exploitation and abuse of children depicted in such material and avoids any suggestion that the material constitutes consensual pornography. *See United States v. Ross,* 171 F.4th 522, 526–27 (1st Cir. 2026) (using "child sexual abuse material" to describe material underlying a conviction for possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B)).

together with an additional exhibit. *Gov't Resp. to Ct. Order* (ECF No. 89); *Additional Attachments* (ECF No. 90)

## II. FACTUAL BACKGROUND

### A. The Presentence Investigation Report

When it sentenced Mr. Cook, the Court relied upon a Revised Presentence Investigation Report (PSR) prepared by the United States Probation Office (PO). At the time of sentencing, the Court accepted the report in its entirety. (ECF No. 78) *Statement of Reasons* at 1.

#### 1. David L. Cook' s History and Characteristics

David Lendon Cook was born to Lendon and Betty Cook on in 1957 in Waterville, Maine. *Revised Presentence Investigation Report* (*PSR*). ¶ 48. His father died of heart disease in 1992 at the age of sixty-one, and his mother died in an automobile accident in 1973 at the age of thirty-eight. *Id.* Mr. Cook has a sister and two brothers. *Id.* Mr. Cook graduated from Skowhegan Area High School in Skowhegan, Maine, on June 11, 1976. *Id.* ¶ 60. From August 30, 1976, to May 27, 1977, Mr. Cook attended Northern Maine Vocational College in Presque Isle, Maine, where he studied electrical construction but received failing grades. *Id.* Mr. Cook reported attending University of Maine in Augusta, Maine, where he studied liberal arts from 1977 to 1978. *Id.* Later, while in Bureau of Prisons (BOP) custody, Mr. Cook earned certifications in optics and business administration. *Id.* On July 28, 1984, Mr. Cook married his wife June. *Id.* ¶ 48. The couple had one child. *Id.*

Mr. Cook has resided in Maine most of his life, excluding 1978 to 1979 when he worked and stayed with distant relatives in Wallingford, Connecticut, and 1979 to 1980 when he resided and worked in Wichita, Kansas. *Id.* ¶ 49. Mr. Cook previously disclosed that he is a recovering alcoholic and that he last consumed alcohol on July 27, 1984. *Id.* ¶ 59. He advised he never received treatment for his alcoholism and that he quit on his own. *Id.*

Mr. Cook reported that, although his basic needs were met during his childhood, he grew up in an abusive and neglectful household. *Id.* ¶ 50. He described his father as physically abusive toward him, his brother, and his mother, and recalled frequently witnessing his father beat his mother. *Id.* He also reported experiencing emotional abuse from his father, grandfather, and uncles. *Id.* According to Mr. Cook, his father and uncles sexually abused several female relatives. *Id.* Mr. Cook further recounted that, when he was approximately ten years old, he was also a victim of sexual abuse. *Id.* Following his mother's death, his father was largely absent, leaving Mr. Cook, at approximately sixteen years old, to assume responsibility for raising his younger siblings. *Id.* Although he recalled that his father's absence brought some relief from the abuse, he described as difficult the responsibilities of caring for his siblings at such a young age. *Id.*

### 2. Criminal History

Mr. Cook has been convicted of numerous crimes. *PSR* ¶¶ 29-40. As a young adult, he was convicted of five instances of "Negotiating a Worthless Instrument," or, in other words, writing a bad check. *Id.* ¶¶ 29-33. He also has several convictions for

motor vehicle offenses, namely, operating after suspension. *Id.* ¶¶ 34, 37, 39. He has a conviction stemming from 1983 when he burgled the Sebasticook Valley Dairy in Pittsfield, Maine, stealing various dairy products and equipment. *Id.* ¶ 36.

Most relevantly, Mr. Cook has a long history of committing sexual crimes against children. In 1989, he was convicted of Rape, Gross Sexual Misconduct and Unlawful Sexual Contact for repeatedly sexually assaulting his six-year-old stepdaughter. *Id.* ¶ 38. For these crimes, he served seven years in prison. *Id.* Thereafter, his probation officer discovered child sexual abuse material in his residence related to his prior offense. *Id.* Consequently, his probation was revoked, and he was ordered to serve an additional 245 days in prison. *Id.* In 1998, Mr. Cook was convicted of possessing and transporting child sexual abuse material and served a prison sentence of fifty-two months. *Id.* ¶ 40. At the time, Mr. Cook's treatment provider advised that "David Cook has very little hope of not re-offending in that he did not complete his victim letters in treatment, and he still does not recognize the trigger events as they are happening." *Id.*

### 3. Nature and Circumstances of the Most Recent Offense

On July 10, 2016, the National Center for Missing & Exploited Children (NCMEC) received a report from the website ChatStep regarding an image believed to contain child sex abuse material uploaded by a user of one of its forums. *Id.* ¶ 4. On September 8, 2016, state and federal law enforcement officers executed the search warrant. *Id.* ¶ 5. Agents advised Mr. Cook, who was there when officers arrived, that he was not under arrest, and Mr. Cook agreed to be interviewed. *Id.* Mr. Cook

volunteered that he engaged in online chats where he discussed his prior abuse of his stepdaughter. *Id.* He stated that he frequented the chat room called "PEDO." *Id.* Mr. Cook stated that at times he came across some concerning content on the site, but he never downloaded it. *Id.* Mr. Cook indicated he had a sexual interest in girls aged from four or five and up to twelve. *Id.* Mr. Cook informed agents he viewed images with the intent to self-gratify. He stated he downloaded drop box links approximately 100 times and often found many images of child sex abuse material, including images of infants. *Id.* He admitted to uploading images of young females. *Id.* Further, Mr. Cook admitted to molesting eleven young girls prior to his stepdaughter. *Id.* Mr. Cook refused to provide the names of his victims out of fear of prosecution. *Id.* He did, however, state that he maintained a Microsoft Word document on his computer that contained the first names and ages of the girls he had victimized. *Id.* The Probation Office later determined Mr. Cook, at that time, possessed a total of twenty-four images of child sexual abuse material; the majority involved prepubescent minors appearing to be under the age of twelve. *Id.* ¶ 6.

### B. Guideline Calculations and Sentence

The Court calculated a total offense level of thirty-two and a Criminal History Category of II, which yielded a guideline range of 135 to 168 months imprisonment, a period of supervised release ranging from five years to life, and a fine ranging from $35,000.00 to $250,000.00. *Statement of Reasons* at 1 (ECF No. 78). *Id.*, Attach. 1, *Findings Affecting Sentencing* (ECF No. 78-1) (*Findings*).

Mr. Cook's guideline range included several enhancements which nearly doubled his base offense level from eighteen to thirty-two. *Id.* He received a two-level enhancement because his offense involved a prepubescent minor who had not yet attained the age 150 images two-level enhancement for knowingly distributing the child sexual abuse material, a four-level enhancement because the material portrayed sadistic or masochistic content, a five-level enhancement for engaging in a pattern of activity involving sexual abuse or exploitation of a minor, a two-level enhancement for using a computer, and a two-level enhancement because the offense involved at least ten but fewer than 150 images. *Id.* ¶¶ 2-8. He received a two-level reduction for acceptance of responsibility and an additional one-level reduction. *Id.* ¶¶ 9-10.

On December 12, 2018, the Court sentenced Mr. Cook to 180 months of imprisonment, followed by ten years of supervised release, and ordered him to pay a $100 special assessment and $1,000 in restitution. *Min. Entry* (ECF No. 74).

**C. David L. Cooks's BOP Medical Records**

Mr. Cook submitted medical records showing that he has been diagnosed with Stage IV colon adenocarcinoma arising in a tubular adenoma. *Def.'s Mot.* Attach. 1.

**D. David L. Cook's BOP Disciplinary Records**

The Government attached one page of Mr. Cook's disciplinary records from the BOP. *Gov't's Opp'n*, Attach. 5, Chronological Disciplinary Record (ECF No. 87-5) (*Disciplinary Record*). The record describes three disciplinary violations by Mr. Cook. *Id.* at 1. On November 13, 2000, Mr. Cook was found to have been insolent toward a

staff member and was sanctioned with ten hours of extra duty. *Id.* On August 9, 2021, he was found guilty of being unsanitary or untidy and was sanctioned with the loss of commissary and telephone privileges for sixty days. *Id.* On August 13, 2024, he was sanctioned for possessing an unauthorized item after prison officials discovered photographs of scantily clad women in his possession. *Id.* He received a one-month loss of commissary privileges, with ninety days suspended. *Id.*

## III. POSITIONS OF THE PARTIES

### A. David L. Cook's Motion

Mr. Cook contends that compassionate release is proper under 18 U.S.C. § 3582(c)(1)(A) because his health conditions qualify him for release under United States Sentencing Guideline § 1B1.13. *Def.'s Mot.* at 2. Mr. Cook, who is currently housed at the BOP Federal Medical Center in Butner, North Carolina, described how his health is "rapidly deteriorating" due to his terminal cancer diagnosis. *Id.* at 1. Mr. Cook asserts that he has waited for more than 30 days for BOP action on his proposed release plan and he is therefore statutorily permitted to bring the present motion to this Court. *Id.* He described numerous grounds upon which he argues, which weigh in favor of granting him compassionate release, including the fact that his BOP recidivism rate is currently at minimum, *id.* at 2, Attach. 3, that he is sixty-eight years old, has already served nine years of his sentence, and that given his projected release date is in March of 2030, *Id.* at 2, Attach. 2, he will almost certainly die in prison. *Id.*

Mr. Cook then argues that nursing homes can sometimes be "unscrupulous" when they place "profits over the wellbeing of the patient" and may be understaffed as a result. *Id.* at 2-3. He further argues that "just as the old person in an unscrupulous nursing home gets neglected in the end of life hospice care due to lack of staffing, the same thing applies" to the state of BOP hospice care available to him. *Id.* Mr. Cook relies on an NPR article which traces, as the article contends, systemic issues in hospice care at BOP-Butner through the story of a former inmate's death. *Id.,* Attach. 4. Mr. Cook argues that the article suggests that one nurse on a shift would have to provide care for up to thirty people. *Id.* at 3. He argues that this is not a high enough ratio of nurse-to-patient care when dealing with the practical medical issues associated with terminal illnesses. *Id.* Mr. Cook acknowledges that the while the "AUSA may object to my being released," that concerns over public safety may be addressed by specific terms of supervised release. *Id.* He notes that he has family willing to take him in upon release. *Id.* at 4*, see also* Attach. 1 at 3. Mr. Cook, in summary, asks the Court to order compassionate release so that he "may die in a humane manner at home." *Id.*

**B. The Government's Opposition**

The Government opposes Mr. Cook's motion for compassionate release on the ground that the sentencing factors under 18 U.S.C. § 3553(a) weigh against his release. *Gov't's Opp'n* at 1 (ECF No. 87). Although the Government acknowledges that Mr. Cook's stage IV colon cancer constitutes an extraordinary and compelling circumstance warranting consideration of compassionate release, it maintains that

Mr. Cook has failed to establish that a sentence reduction would be appropriate in light of his criminal history, the seriousness of his offense, and the continuing danger he poses to the community. *Id.* at 9-11.

To begin, the Government acknowledges that Mr. Cook has satisfied the administrative exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A). *Id.* at 3, 9. The Government explains that Mr. Cook's request for compassionate release has been pending before the BOP for more than thirty days and that the request was forwarded by the warden to the BOP's Central Office, where it remains under review. *Id.* at 3.

The Government further acknowledges that, although Mr. Cook's submitted medical records indicate that he has stage IV cancer without providing a prognosis or life expectancy, the Government understands that he is now considered to have a terminal illness under applicable BOP policy. *Id.* at 9. Accordingly, the Government does not dispute that Mr. Cook has presented "extraordinary and compelling" circumstances. *Id.*

Before addressing the merits of Mr. Cook's motion, the Government discusses the legal framework governing compassionate release, particularly in light of the Supreme Court's recent decisions in *Rutherford v. United States* and *Fernandez v. United States*. *Id.* at 3-9. The Government argues that these decisions have narrowed the First Circuit's previously expansive approach to identifying extraordinary and compelling reasons for compassionate release. *Id.* at 6-9. Specifically, the Government maintains that the Supreme Court has rejected an unrestricted, holistic inquiry into any combination of circumstances raised by a

defendant and has instead emphasized that compassionate release should ordinarily concern a prisoner's personal circumstances, including age, illness, and family circumstances. *Id.* at 6-8. The Government acknowledges, however, that Mr. Cook's terminal illness falls within the circumstances contemplated by the "exceptional circumstances" requirement. *Id.* at 9.

Turning to the sentencing factors under § 3553(a), the Government contends that Mr. Cook has failed to establish that those factors favor early release. *Id.* at 9-10. The Government emphasizes that Mr. Cook is serving a fifteen-year sentence for accessing with intent to view child sex abuse material depicting a child under twelve years old. *Id.* at 1. It notes that Mr. Cook was subject to a ten-year mandatory minimum sentence because of his prior federal conviction for possessing child sex abuse material in 2000 and his 1989 conviction for rape, gross sexual assault, and unlawful sexual contact involving a six-year-old child. *Id.* The Government further observes that Mr. Cook admitted to molesting eleven other young girls and, during a 2016 interview with law enforcement, acknowledged a sexual interest in girls between five and twelve years old. *Id.* at 1-2.

Regarding Mr. Cook's criminal history, the Government argues that his repeated sexual offenses demonstrate a continuing danger to children. *Id.* at 10. According to the Government, Mr. Cook's prior convictions and sentences did not deter him from engaging in further sexual exploitation of children. *Id.* The Government acknowledges that Mr. Cook's more recent offenses did not involve physical contact with children but contends that this distinction provides little

reassurance because offenses of this nature can be committed from the privacy of one's home using a computer. *Id.* The Government therefore maintains that Mr. Cook's proposed release to his home would not adequately protect the public from future offenses. *Id.* at 10-11.

The Government also addresses Mr. Cook's conduct while incarcerated. It acknowledges that Mr. Cook has served more than nine years in custody, representing over sixty-one percent of his full sentence and over seventy-one percent of his sentence when considering good-time credits. *Id.* at 2. The Government also recognizes that Mr. Cook has paid his financial obligations, participated in educational programming, remained on the waitlist for sex offender treatment, and received a low security classification. *Id.*, Attachs. 2-4. Nevertheless, the Government points to Mr. Cook's disciplinary record, particularly a 2024 violation for possessing photographs of scantily clad women, which the BOP characterized as "risk relevant" to Mr. Cook. *Id.* at 2, 10. The Government argues that this violation, considered alongside his criminal history, provides little reason to believe that Mr. Cook will refrain from reoffending if released. *Id.* at 10.

The Government also disputes the significance of Mr. Cook's low recidivism risk score. *Id.* Although it acknowledges that Mr. Cook has been assessed as presenting a low risk of recidivism, the Government argues that the assessment Mr. Cook proffers serves a different purpose and does not account for all the recidivism-related considerations relevant under § 3553(a). *Id.*

The Government challenges Mr. Cook's concerns about the adequacy of medical treatment in BOP custody. *Id.* at 9 n.6. It argues that Mr. Cook relies on outdated news articles concerning BOP facilities and has not presented evidence demonstrating deficiencies in the treatment he personally receives for his cancer. *Id.* Nor, according to the Government, has Mr. Cook established that he would receive better medical care if released. *Id.*

Finally, the Government argues that the original sentence continues to reflect the seriousness of Mr. Cook's offense, promote respect for the law, provide just punishment, and afford adequate deterrence. *Id.* at 10. The Government maintains that the Court considered Mr. Cook's age when imposing his fifteen-year sentence and that his subsequent illness does not diminish the sentencing considerations that justified that sentence. *Id.* at 10-11. It further argues that neither advanced age nor serious illness necessarily prevents an individual from committing child sex abuse material offenses. *Id.* Accordingly, the Government concludes that Mr. Cook's continued incarceration remains necessary to protect the public, particularly children, and that the § 3553(a) factors weigh against compassionate release notwithstanding his terminal illness. *Id.* at 11.

## IV. LEGAL STANDARD

Before considering the merits of a defendant's motion for compassionate release, the Court must determine whether the defendant has satisfied the procedural requirements of 18 U.S.C. § 3582(c)(1)(A). Specifically, the defendant must have either fully exhausted his administrative remedies or waited thirty days

after the warden received his request for compassionate release, whichever is earlier. See 18 U.S.C. § 3582(c)(1)(A) (permitting a defendant to move for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").

Once those requirements are satisfied, the Court undertakes a multistep inquiry. First, the defendant must establish "extraordinary and compelling" reasons warranting a sentence reduction. *United States v. Burgos-Montes*, 142 F.4th 48, 57 (1st Cir. 2025). The Court must also determine whether the requested reduction is consistent with the Sentencing Commission's applicable policy statement, U.S.S.G. § 1B1.13, which requires that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2).

If these requirements are satisfied, the Court considers the relevant sentencing factors under 18 U.S.C. § 3553(a) and "determine[s] whether, in its discretion, the [sentence] reduction . . . is warranted in whole or in part under the particular circumstances of the case." *Burgos-Montes*, 142 F.4th at 57 (quoting *United States v. Saccoccia*, 10 F.4th 1, 4 (1st Cir. 2021)). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; "the kinds of sentences available"; the applicable sentencing range and pertinent policy statements; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1)–(7).

## V. DISCUSSION

### A. Administrative Exhaustion

As noted earlier, before considering the merits of Mr. Cook's motion for compassionate release, the Court must determine whether he has satisfied the administrative exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A). The statute permits a defendant to seek modification of their term of imprisonment after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Here, Mr. Cook submitted a request for compassionate release to BOP based on his terminal illness. *Def.'s Mot.* at 4. The Government acknowledges that more than thirty days have elapsed since Mr. Cook submitted his request and that the request, although forwarded by the warden, remains under review at the BOP's

Central Office. *Gov't's Opp'n* at 3. The Court concludes that Mr. Cook may properly seek compassionate release under § 3582(c)(1)(A) and proceeds to consider the merits of his motion.

**B. Extraordinary and Compelling Reasons**

Mr. Cook has been diagnosed with stage IV colon cancer. *Def.'s Mot.*, Attach. 1. The Sentencing Guidelines expressly identify "metastatic solid-tumor cancer" as an example of a terminal illness constituting an extraordinary and compelling reason for compassionate release. U.S.S.G. § 1B1.13(b)(1)(A) (an example of a terminal illness where a specific prognosis of life expectancy is not requires includes "metastatic solid-tumor cancer"). The Government acknowledges that his condition meets the BOP's criteria for terminal illness. *Gov't's Opp'n* at 2, 9. They therefore concede that Mr. Cook's medical condition presents "extraordinary and compelling" circumstances within the meaning of § 3582(c)(1)(A). *Id.* at 9.

The Court agrees. Mr. Cook's stage IV colon cancer constitutes metastatic disease of the kind expressly contemplated by U.S.S.G. § 1B1.13(b)(1)(A). Moreover, the absence of a specific life-expectancy prognosis does not undermine this conclusion because the Guidelines expressly provide that "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." *Id.* Considering Mr. Cook's diagnosis, the Guidelines' express recognition of metastatic solid-tumor cancer as an example of terminal illness, and the Government's concession, the Court concludes that Mr. Cook has demonstrated an extraordinary and compelling reason warranting consideration of a sentence reduction.

### C. Dangerousness Under U.S.S.G. § 1B1.13(a)(2)

The Court recognizes that Mr. Cook's extensive history of sexual offenses involving children raises serious concerns about the danger he may pose to the community, especially to young children, if released. Under U.S.S.G. § 1B1.13(a)(2), the Court must determine whether Mr. Cook "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In making this determination, the Court considers the nature and circumstances of his offenses, his history and characteristics, and the nature and seriousness of any danger posed to the community by his release. *See* 18 U.S.C. § 3142(g).

The Court's dangerousness inquiry necessarily overlaps with its consideration of the sentencing factors under 18 U.S.C. § 3553(a), particularly the need "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). Accordingly, the Court considers Mr. Cook's present risk to the community in light of his criminal history, medical condition, conduct during incarceration, and proposed conditions of release.

Mr. Cook's criminal history raises substantial concerns about the danger he may pose to the community. Mr. Cook was previously convicted of rape, gross sexual assault, and unlawful sexual contact involving a six-year-old child, and he admitted to sexually molesting eleven other young girls. *PSR* ¶¶ 6-7. Despite his prior convictions and periods of incarceration, Mr. Cook continued to engage in offenses involving the sexual exploitation of children, culminating in his present conviction for accessing with intent to view child sex abuse material. *Id.* ¶¶ 5-7. His repeated

offenses demonstrate a substantial risk of recidivism and raise serious doubts about his ability to refrain from further sexually exploiting children if released. The Court is also concerned about Mr. Cook's August 2024 disciplinary violation for possessing unauthorized photographs of scantily clad women, which the BOP characterized as "risk relevant" in light of his criminal history. *Gov't's Opp'n* at 2. Conversely, that the BOP has classified Mr. Cook as presenting a low risk of recidivism, weighs in Mr. Cook's favor. *See Def.'s Mot.* at 2, Attach. 3 at 2.

Nevertheless, the Court must consider Mr. Cook's present circumstances in assessing the danger he would pose if released. Mr. Cook is now sixty-nine years old and suffers from stage IV colon cancer, which the Government acknowledges constitutes a terminal illness. *Id.* at 2, 9. However, this is the extent of what the record reveals about Mr. Cook's present medical condition and its impact on his risk to children. The dangerousness inquiry under § 1B1.13(a)(2) does not necessarily require a finding that a defendant poses no conceivable risk to the community; rather, a court may consider whether appropriate conditions of supervised release can sufficiently mitigate that risk. *See United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) ("The Court is hesitant to find Defendant poses no risk to the community, as fraud appears ingrained in his character. However, given Defendant's health problems, the Court is convinced any risk can be managed by the terms of his supervised release"); *see also United States v. Stottlar*, 834 F. Supp. 3d 214, 227 (D.N.H. 2026) (concluding that the defendant was "not likely to pose a danger to any person or the community" notwithstanding his history of drug trafficking and firearm

possession because he was "not likely to recidivate given his remarkable rehabilitation and commitment to addressing the root causes of his unlawful activity"). Section 1B1.13(a)(2) permits an individualized assessment of whether the defendant's present circumstances and conditions of supervised release sufficiently mitigate the danger he poses to the community.

The Court's assessment of whether Mr. Cook's release would adequately protect the public under § 1B1.13(a)(2) depends upon a more developed factual record regarding his physical condition and details of his proposed living arrangements. In *Willis*, the court had evidence that the defendant was "wheelchair bound, blind, and requires 24/7 care," and had received a prognosis of eighteen months or less to live. 382 F. Supp. 3d at 1188. Although the court was "hesitant to find Defendant poses no risk to the community," it concluded that, "given Defendant's health problems," any risk could be managed through supervised release. *Id.*

Here, although Mr. Cook's terminal cancer diagnosis is established, the Court lacks comparable information concerning his current physical limitations, his medications, and in general his level of incapacity. Obviously, the more physically incapacitated, the less of a danger to children. But the record contains no specific information on this issue apart from his diagnosis.

Furthermore, Mr. Cook suggests that he return to the residence of his sister, Ann Green, who is willing to have him return to her residence. But Mr. Cook was living with Ms. Green at her Burnham, Maine residence in 2016 when he committed the crime for which he is now incarcerated. The Court has been concerned about

whether Ms. Green would prevent her brother from committing a new sexual crime against children if he is released, when she did not do so in 2016.

To this end, on October 27, 2026, the Court issued an order to supplement the record, directing the Probation Office to conduct a home assessment of Mr. Cook's proposed living arrangement. *Order to Suppl. the R.* (ECF No. 88). On October 28, 2026, the Probation Office filed its assessment with the Court. *Assessment of Proposed Release Address* (ECF No. 89).

In the assessment, the Probation Office revealed that Mr. Cook's proposed residence with his sister is located in rural Waldo County, Maine. *Id.* at 1. The residence is a two-bedroom camper owned by his sister. *Id.* The Probation Office noted no safety concerns in the residence. *Id.* There is a daycare about 1.5 miles away from his sister's camper on a dead-end, secondary road, but the Probation Officer doubted that Mr. Cook's travel would bring him there. *Id.*

The Probation Officer spoke with Mr. Cook's sister, Anne Green, and she affirmed that she understood that if released, Mr. Cook would have court-ordered conditions. *Id.* Ms. Green represented that no children visit her residence and the only family member with a minor child lives in Florida and they are estranged. *Id.*

The Probation Office concluded that if Mr. Cook is released the special supervised release conditions that were imposed at his sentencing would continue to be appropriate, subject to revision to reflect contemporary language. The Court accepts the Probation Office's assessment of Ms. Green's residence, its remoteness,

and the unlikelihood of his exposure to children; however, the Court requires further information from Mr. Cook that it delineates below.

**D. § 3553(a) Factors**

The Court must also consider whether the sentencing factors set forth in 18 U.S.C. § 3553(a) favor a reduction in Mr. Cook's sentence. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1); the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with necessary medical care or other correctional treatment, § 3553(a)(2); the kinds of sentences available, § 3553(a)(3); the applicable sentencing guidelines range, § 3553(a)(4); any pertinent policy statements issued by the Sentencing Commission, § 3553(a)(5); the need to avoid unwarranted sentencing disparities among similarly situated defendants, § 3553(a)(6); and the need to provide restitution to victims, § 3553(a)(7).

The Court begins with the nature and circumstances of Mr. Cook's offense, which weigh heavily against a sentence reduction. Mr. Cook is serving a fifteen-year sentence for accessing with intent to view child sex abuse material depicting children under twelve years old. *Gov't's Opp'n* at 1. His offense involved seeking out images of child sexual abuse for sexual gratification. He possessed images depicting the sexual assault of prepubescent girls by adult men. *Id.* at 1-2. Moreover, as discussed above, Mr. Cook has a decades long criminal history involving the sexual exploitation

of children, including prior convictions for sexual offenses against a six-year-old child and possession of child sex abuse material. *Id.* The Court cannot overlook the seriousness of these offenses, the inherently risky conduct, and the devastating harm that the sexual exploitation of children causes its innocent victims.

Turning to Mr. Cook's history and characteristics, the Court acknowledges his difficult upbringing, including the physical, emotional, and sexual abuse he experienced during his childhood. *PSR* ¶¶ 50-51. Mr. Cook reported that he grew up in a household in which sexual abuse was normalized, where he himself was introduced to sexual behavior by being victimized, and that he subsequently came to recognize the harm caused by his own conduct. *Id.* Although these circumstances do not excuse his offenses, they provide relevant context. The Court also considers Mr. Cook's age and deteriorating health. Mr. Cook is now sixty-nine years old and has been diagnosed with stage IV colon cancer, which the Government acknowledges constitutes a terminal illness. *Gov't's Opp'n* at 2, 9. His medical condition represents a significant change in his circumstances since the Court originally imposed sentence. The Court also considers Mr. Cook's conduct and rehabilitative efforts while incarcerated. According to the Government, Mr. Cook has participated in educational programming, including courses related to health, and has remained on the waitlist for sex offender treatment. *Id.* at 2. Nevertheless, the Court recognizes that Mr. Cook has not completed sex offender treatment and that his institutional record is not entirely free of disciplinary violations. The Court therefore concludes this factor weighs against release.

The Court next considers the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. 18 U.S.C. § 3553(a)(2)(A). At the sentencing hearing, the Court imposed a term of 180 months of imprisonment. Mr. Cook has now served more than nine years in custody, representing over sixty-one percent of his full sentence and more than seventy-one percent when good-time credits are considered. *Id.* at 2. The Court recognizes that the sentence originally imposed reflected the seriousness of Mr. Cook's criminal conduct and the need to protect society. Nevertheless, the Court must consider whether continued incarceration is necessary to achieve those purposes in light of his terminal diagnosis and the substantial portion of his sentence he has already served.

The need to afford adequate deterrence and protect the public from further crimes of the defendant weighs heavily in the Court's consideration. 18 U.S.C. § 3553(a)(2)(B)-(C). The Government argues that neither Mr. Cook's advanced age nor his terminal illness necessarily prevents him from accessing child sex abuse material online, particularly because such offenses can be committed from the privacy of his home. *Gov't's Opp'n* at 10-11. The Court takes these concerns very seriously. Indeed, Mr. Cook's extensive history of sexual offenses against children raises serious concerns about the danger he may pose to children upon release. Nevertheless, courts have recognized that conditions of supervised release may mitigate the risk of reoffending when evaluating this factor. *See United States v. Mowry*, No. 1:18-cr-00015-NT, 2021 U.S. Dist. LEXIS 14326, at *10–12 (D. Me. Jan. 26, 2021) (concluding

that "[r]obust supervised release conditions can be deployed to alleviate concerns as to the safety of the community" and that "[w]ith adequate conditions of supervised release, I can effectively mitigate the risk that Mr. Mowry will reoffend"); *see also United States v. Dufresne*, No. 16-cr-75-1-PB, 2020 U.S. Dist. LEXIS 178762, at *10 (D.N.H. Sept. 29, 2020) (concluding that, "[a]lthough I am not blind to the risk that Dufresne poses to the public if he is released without adequate supervision, I am satisfied that that risk can be mitigated" through residential placement and supervision); *United States v. Summerfield*, No. 2:06-cr-00428-KJM, 2021 U.S. Dist. LEXIS 74013, at *18 (E.D. Cal. Apr. 15, 2021) (finding that the defendant's age, supervised release term, and release plan mitigated the danger he otherwise posed to the community).

To adequately determine whether Mr. Cook's release would adequately protect the public under § 3553(a)(2)(C), the Court requires more information. In *United States v. Dufresne*, the court observed that "[h]is physical incapacitation by his medical conditions further reduces his risk to the public." 2020 U.S. Dist. LEXIS 178762, at *10. The court also considered the defendant's "pre-negotiated reacceptance into his former sober house, should he be released," *id.* at *9, and concluded that the risk to the public "can be mitigated by requiring him to serve the first year of his remaining sentence in a residential reentry center and then requiring him to reside at, and abide by, all requirements of a sober house approved by his probation officer," *id.* at *10. The *Mowry* court was similarly able to account for factors such as the defendant's "limited mobility, and his release plan" in determining

what danger the defendant may pose to the community. 2021 U.S. Dist. LEXIS 14326, at *10.

Unlike in *Dufresne* and *Mowry*, the Court lacks comparable information concerning how Mr. Cook's illness physically impacts him. To fully assess whether Mr. Cook's release would adequately protect the public under § 3553(a)(2)(C), Court needs additional information concerning his physical condition and proposed release arrangements.

The Court further considers the need to provide Mr. Cook with necessary medical care in the most effective manner. 18 U.S.C. § 3553(a)(2)(D). Mr. Cook's stage IV colon cancer is a serious medical condition requiring ongoing care. The Government observes that Mr. Cook has not demonstrated deficiencies in the medical treatment he currently receives from the BOP nor established that he would receive superior medical care upon release. *Gov't's Opp'n* at 9 n.6. While the Court agrees with the Government's observation here, the Court recognizes the significance of his terminal diagnosis and his expressed desire to spend his remaining time at home. *Id.*[2]

Finally, the Court considers the remaining applicable § 3553(a) factors, including the kinds of sentences available, the applicable Guidelines range and policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution. 18 U.S.C. § 3553(a)(3)-(7). Mr. Cook has satisfied the financial

[2] The Court has reviewed the NPR article cited by Mr. Cook, *see Def.'s Mot.* at 3, Attach. 4, but concludes that neither the article nor Mr. Cook's generalized assertions regarding conditions on Floor 5 of the Bureau of Prisons' Federal Medical Center in Butner, North Carolina, establishes that he personally is receiving inadequate medical care.

obligations associated with his conviction. *Gov't's Opp'n* at 2. Mr. Cook has now served more than nine years in custody, approaching the ten-year mandatory minimum sentence applicable to his offense.

### E. The § 3553(a) Factors Cannot be Adequately Assessed on the Current Record

The Court lacks information necessary to determine whether Mr. Cook's release would adequately protect the public from further crimes under 18 U.S.C. § 3553(a)(2)(C). Information that would assist the Court includes the severity of Mr. Cook's physical limitations, the technology and internet access that would be available to him upon release either by accessing his own computer or his sister's computer, and the degree of independence he would enjoy in his sister's camper. Although the parties' subsequent filings supplemented the record, they do not clarify the extent of Mr. Cook's physical limitations, the technology to which he would have access, or whether his anticipated daily activities would bring him into proximity to the nearby daycare facility. Without a more developed picture of what his release would look like, the Court cannot yet determine whether this highly important factor weighs in favor of a sentence reduction.

## VI. CONCLUSION

The Court RESERVES RULING on David Cook's Motion to Reduce Sentence for Compassionate Release (ECF No. 82) pending supplementation of the record. The Court ORDERS the defendant to provide additional information concerning his current physical condition, including updated reports from his treating providers, and details of his proposed living arrangements within twenty-eight days of this Order.

Once the record has been supplemented, the Court will determine whether Mr. Cook satisfies the dangerousness requirement under U.S.S.G. § 1B1.13(a)(2) and whether the factors set forth in 18 U.S.C. § 3553(a) favor a sentence reduction.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of November, 2026